UNITED STATES of America

v.

Rahshawn BRAXTON, a/k/a Shawn
Braxton, a/k/a Tyree Smith

No. CR. 00–117.

United States District Court,
E.D. Pennsylvania.

June 1, 2000.

Carol A. Sweeney, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Defender Ass'n., Defender Ass'n of Philadelphia, Philadelphia, PA, for Rahshawn Braxton.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Defendant has been charged with three (3) Counts involving knowing and intentional possession with intent to distribute cocaine base ("crack"), knowingly possessing a firearm with an obliterated serial number, and, being a convicted felon, knowingly in possession of a firearm. Defendant has filed a Motion to Suppress Statements and Physical Evidence obtained by the police. After a hearing thereon, I make the following Findings of Fact.

## FINDINGS OF FACT

1. On September 20, 1999, at approximately 2:47 A.M., Philadelphia Police Officer John Feenan received a radio call to go to an automobile accident and possible case of drunk driving at 200 westbound 676. When the officer arrived, the defendant, Rahshawn Braxton, was leaning against a road barrier (jersey barrier), approximately 50 yards from an unoccupied automobile. The officer observed that the defendant held his left hand firmly in the area of the left front pants pocket, near his waistband, and that he was rubbing his neck with his right hand. Officer Feenan asked Braxton if he was injured and Braxton replied that his neck hurt. Feenan advised the defendant that rescue was coming and left him for the purpose of examining the defendant's car.

When Officer Feenan, after examining the car, returned to the defendant, Braxton was still holding his left hand in the same area of his body and rubbing his neck with his right hand. Feenan then walked in the opposite direction to examine the damage to the barrier. When he returned, he again noticed that the defendant still held his left hand firmly against his body on the left side in the area of the front pocket and belt while using his right hand to rub his neck.

Officer Feenan asked the defendant for his license, registration, and proof of insurance, but the defendant could not produce any of these documents. Braxton told Feenan that someone had cut him off, and that the car he was driving belonged to a friend and he had borrowed it to go to his girlfriend's house. While talking, the defendant gestured with his right hand, but continued to keep his left hand firmly against his body in the area of his waistband on the left front side of his body.

Officer Feenan, who had responded to over 500 accident scenes, believed that the defendant's demeanor differed substantially from that of other accident victims with whom he dealt. In his experience, it was unusual for someone, under these circumstances, to remain quietly leaning against a barrier rather than getting up to check the damage he had caused to his friend's car or pacing up and down. Feenan also testified that when individuals, in his experience, are in accidents driving other people's cars, they express concern about the car owner's reaction to the accident. Feenan also believed that it was odd that Braxton had not moved his left hand from the left front waistband area during the entire time. Officer Feenan also stated that it was obvious that the defendant was not just pressing his hand against his body in the left front waistband area, but that he was gripping something in his left hand but that Officer Feenan could not tell what that was. The defendant was wearing a loose yellow jacket which extended down below the waist area and prevented Feenan from discovering the shape of the item that defendant was holding. Because the defendant's hand was positioned in the waistband area in the left front near the pocket, where Feenan testified that criminals often carry firearms or other weap-

ons, he believed that the defendant may have been armed.

While this was going on, Lieutenant James Fagan and Officer James Clough arrived at the scene. Officer Feenan told Lieutenant James Fagan that he thought the defendant was concealing something. As the officers approached the defendant, he turned his left side away from them, Feenan asked the defendant what he was holding in his left hand and the defendant replied "nothing." This response strengthened Feenan's concern that Braxton was armed, and Feenan reached toward the defendant's left hand but defendant pushed his hand away. Feenan reached for that same area again, felt what he recognized to be the barrel of a semi-automatic weapon, and told the other officers that Braxton had a gun. Feenan unholstered his weapon, told the defendant to let go, the defendant refused, Feenan repeated his command for the defendant to let go of the weapon, defendant refused to comply, whereupon Feenan told Officer Clough to put handcuffs on the defendant, which caused the defendant to move his left hand enabling Feenan to retrieve a 40–caliber semi-automatic pistol. The pistol was fully loaded. The defendant was placed under arrest for violating Pennsylvania State Firearm's Statutes.

Officer Feenan told Braxton that he was stupid for not getting rid of the gun when the officers were checking damage to the car and the barrier. The defendant then stated that it was his boy's gun, and he couldn't leave it in the car.

Braxton was patted down, taken to Hahnemann Hospital for treatment of a small cut on the forehead and his sore neck. At the hospital, Officer Feenan performed a thorough search incident to the arrest, and found, in the right front pouch pocket of defendant's jacket, a clear plastic bag containing 30 black-tinted bags, each containing an off-white chunky substance. The substance was later found to be cocaine base ("crack"), having a total weight of 2.34 grams.

## DISCUSSION

A review of the circumstances observed by Officer Feenan reveals the following. At approximately 3:00 A.M., Officer Feenan is called to respond to a one-car accident. The individual involved has no license, registration or insurance card; in fact, he has no identification at all. The driver of the car tells the officer that the car belonged to a friend. During the entire time that Officer Feenan was at the scene, about 15 minutes, defendant leaned against the road barrier with his left hand pressed against his left side in the waistband area of his front pocket. In addition to the left hand being held in the manner stated, Officer Feenan observed that it was holding something. The object was obscured by the jacket worn by the defendant that came below his waist. When asked what he was holding, the defendant stated, "nothing."

■ To conduct a protective frisk, "the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The strange behavior of the defendant was sufficient to lead a reasonable police officer to believe that this person was concealing a gun or other weapon. The fact that the defendant did not get rid of whatever he was hiding under his jacket when the officer walked 50 yards away to check on damage to the automobile and walked in the opposite direction to check on damage to the road barrier, could lead a reasonable police officer to suspect that the defendant did not get rid of whatever it was he was hiding because he might have a need for it if the officer's investigation of this automobile accident should take a turn that displeased the defendant. When police officers stop a motor vehicle, or come upon an accident scene, they nev-

er know what criminal activity they might inadvertently uncover. When an occupant of a vehicle acts in the manner of this defendant, the police officer has the right, for his own protection, to ask the individual what he is concealing under his jacket. When he gets the response, "nothing," the officer has the right to further conduct a pat down for a concealed weapon. When this defendant brushed the officer's hand away, and the officer again reached in that area and could feel the barrel of an automatic weapon, he had the right to disarm the defendant and place him under arrest.

■ Later at the hospital, the search incident to the arrest which revealed the crack cocaine, was lawful.

■ After the defendant was taken into custody but prior to his being read his Miranda warnings, Police Officer Feenan said to the defendant words to the effect, "You're stupid for not getting rid of the gun." To which the defendant responded, "I couldn't, it was my buddy's." The safeguards set forth in *Miranda v. Arizona* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) come into play whenever a person in custody is subjected to either expressed questioning or its functional equivalent. The term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of the definition focuses primarily upon the perceptions of the suspect rather than the intent of the police. Under the circumstances of this case, I find that the police officer should have known that his statement to the defendant was reasonably likely to elicit an incriminating response. I find that it was, therefore, obtained in violation of the defendant's *Miranda* rights and should be suppressed. I, therefore, make the following Order.